**SO ORDERED.**

**SIGNED this 19 day of July, 2013.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

**SUZANNE S. CLIFTON,**                              **CHAPTER 7**
                                                     **CASE NO. 09-02379-8-RDD**
**DEBTOR**


### ORDER

Pending before the Court is the Report of Sale Proceeds and Trustee's Motion for Final

Disbursement 208 Bordeaux Lane, Cary, NC and the accompanying Memorandum of Law filed by

the Chapter 7 Trustee (the "Trustee") on April 23, 2013 ("Motion for Disbursement"), the Debtor's

Objection to Report of Sale Proceeds and Trustee's Motion for Final Disbursement 208 Bordeaux

Lane, Cary, NC filed by Suzanne S. Clifton (the "Debtor") on May 8, 2013, the Response in

Opposition to Trustee's Motion for Final Disbursement filed by the Internal Revenue Service (the

"IRS") on May 15, 2013, the Objection of PNC Bank, N.A. to Trustee's Report of Sale and Motion

for Final Disbursement and Request for Hearing filed by PNC Bank, N.A. ("PNC") on May 16, 2013,

and the Response and Memorandum of Law in Support of Trustee's Report of Sale and Motion for

Final Disbursement 208 Bordeaux Lane, Cary, NC filed by Lawrence E. Clifton ("Mr. Clifton") on

June 16, 2013.  The Court conducted a hearing on June 17, 2013, in Wilson, North Carolina to consider these matters.

## STATEMENT OF FACTS

The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 24, 2009.  As of the petition date, the Debtor and her non-filing spouse owned as tenants by the entirety real property located at 208 Bordeaux Lane, Cary, North Carolina 27511 (the "Property").  On April 8, 2009, the Debtor filed her Schedule C and exempted "pursuant to 11 U.S.C. § 522 and the law of the State of North Carolina pertaining to tenants by the entirety" three pieces of real property, including the Property.  The Debtor listed the market value of the Property as $750,000.00. The Debtor listed a lien against the Property in the amount of $340,000.00 held by Paragon Commercial Bank.  On September 14, 2011, the Debtor's case was converted to a case under Chapter 7 of the Bankruptcy Code.   Walter L. Hinson is duly appointed as the Chapter 7 Trustee (the "Trustee").

The IRS filed two proofs of claim. On April 1, 2009, the IRS filed Proof of Claim Number 1 as an unsecured priority claim in the amount of $15,993.00.  On April 15, 2009, the IRS filed Proof of Claim Number 7 ("Claim 7") as an unsecured priority claim in the amount of $7,034,504.83 based on taxes or penalties owed to governmental units pursuant to 11 U.S.C. § 507(a)(8).  On November 21, 2011, the IRS amended its Claim 7 and claimed the amount of $2,900,000.00  as entitled to priority as taxes or penalties owed to governmental units pursuant to 11 U.S.C. § 507(a)(8).  Claim 7 is based on trust fund recovery penalties for the Debtor's failure to submit to the IRS employment taxes withheld from employees. The amended Claim 7 is the result of a Consent Order entered on September 14, 2011, that compromised the Debtor's tax liability to $2,900,000.00.  The Debtor is

individually liable on the IRS's claims.  Based on the representations made at the June 17, 2013 hearing, the IRS has not filed a public Notice of Federal Tax Lien.

PNC holds a joint claim against the Debtor and her non-filing spouse, Mr. Clifton, in excess of $600,000.00 based on an equity line of credit agreement originally secured by a second lien mortgage conveying real property owned by the Debtor and her husband in North Palm Beach, Florida.  The Florida property was sold pursuant to an Order of this Court. The net sales proceeds were paid to the first lien holder on the Florida Property and PNC did not receive any of the proceeds. Accordingly, PNC is a joint unsecured creditor.

On January 30, 2012, the Court entered the Order Sustaining Objection of RBC Bank (USA) (PNC is the successor to RBC Bank (USA)) to Debtor's Claim of Exemption. The Order states:

> 2.     Debtor may not exempt the three tracts of real property owned by debtor and her husband at 2601 North Lumina Avenue, Wrightsville Beach, North Carolina, 208 Bordeaux Lane, Cary, North Carolina, and 760 Harbour Isles Court, North Palm Beach, Florida from the RBC Bank (USA) joint claim against debtor and her non-filing husband, or any other joint claim.
> 3.     *The debtor's tenancy by the entireties exemption shall be valid only with respect to claims held against the debtor, but not joint claims against debtor and her non-filing spouse.*

*In re Clifton*, No. 09-2379-8-RDD (Bankr. E.D.N.C. Jan. 30, 2012) (emphasis added).

On March 8, 2012, the Debtor amended her Schedule C and did not claim any real property as exempt based on tenants by the entirety. On February 28, 2013, the Court entered the Order Allowing Relief from Stay in Part and Denying Relief from Stay in Part ordering the modification of the automatic stay to permit PNC to prosecute one or more civil actions against Mr. Clifton and obtain and transcribe judgments against him.

3

On March 22, 2013, the Court entered the Order Allowing Private Sale of the Property. The order authorized the Trustee and Mr. Clifton to sell the entire fee simple ownership interest in the Property at a private sale for the sum of $600,000.00. On March 22, 2013, the Court also entered the Order as Terms of Closing and Distribution of Funds from Private Sale. This Order acknowledged that after the sale of the Property there would likely be a balance of adjusted gross proceeds left for the Trustee to disburse. The Court directed that within thirty days of the entry of the Order Allowing Private Sale of Property, the Trustee was to submit a motion for disbursement of proceeds and file a memorandum of law setting forth what he believes to be the appropriate disbursement of the proceeds.

On April 24, 2013, the Trustee filed the Report of Sale Proceeds and Trustee's Motion for Final Disbursement 208 Bordeaux Lane, Cary, NC and the accompanying memorandum of law setting forth his proposed distribution of the proceeds. The Debtor, the IRS, PNC, and Mr. Clifton filed responses.

## DISCUSSION

The issue before the Court is the proper disbursement of sale proceeds of tenants by the entirety property. The net funds, after deduction of closing costs and Court approved payments to both the Debtor and Mr. Clifton are $191,016.03 (the "Net Proceeds") as detailed in the Motion for Disbursement[1]. The Trustee proposes to distribute one-half of the Net Proceeds to Mr. Clifton in the

---

[1] The Motion for Disbursement provides:

The receipts and disbursements of the sale are as follows:

Gross Sales Price:                                                    $600,000.00

Disbursement from Sale Proceeds at Closing:

Payoff First Mortgage to Paragon Commercial Bank                      $345,553.99

amount of $95,508.12. The Trustee then proposes to distribute $53,758.02 to PNC, the only joint creditor of the Debtor and Mr. Clifton.  This amount represents the Debtor's one-half of the Net Proceeds, less payment of $13,500.00 to the Debtor based on her allowed homestead exemption and administrative expenses.

| | |
|---|---|
| Realtor's Commission | $36,000.00 |
| Scott Beasley - wire fee for payoff | $30.00 |
| Wake County Revenue Stamps | $1,200.00 |
| | |
| Wake County ad valorem taxes 2011 & 2013 | $12,927.61 |
| Wake County ad valorem taxes 2013 (pro-rated) | $1,377.37 |
| Pat McCann - plumbing Repair | $145.00 |
| Bat & Squirrel Removal | $750.00 |
| | |
| Net to Trustee: | $202,016.03 |
| | |
| Less Reimbursement to Larry Clifton for pre-sale approved repairs | $11,000.00 |
| | |
| Net to Disburse to the separate estates: | $191,016.03 |
| Estate of Suzanne Clifton $95,508.02 | |
| Lawrence Clifton $95,508.01 | |
| | |
| Disbursement to the separate estates: | |
| | |
| Estate of Suzanne Clifton (the bankruptcy estate) | $95,508.02 |
| | |
| Less: | |
| Residential Exemption to Suzanne Clifton | $13,500.00 |
| Cash payout for washer/dryer/refrigerator | $1,000.00 |
| | |
| Held by the Trustee to be distributed; | $81,008.02 |
| Less legal fees - Walter L. Hinson | $27,250.00 |
| There are no other joint unsecured creditors. | |
| Balance to PNC | $53,758.02 |
| | |
| Lawrence Clifton | $95,508.01 |
| | |
| Less: Payment to Lawrence Clifton | $95,508.01 |
| | |
| Net Remaining of Lawrence Clifton's Portion | $0.00 |

5

The Debtor and the IRS both object to the Trustee's proposed distribution and argue that the Debtor's one-half portion of the Net Proceeds should be disbursed to the IRS as an unsecured priority creditor.  The Debtor and the IRS do not raise any objection to the Trustee's proposed distribution of $95,508.01 to Mr. Clifton.

The Debtor contends that joint, unsecured claims should only be paid outside the priority scheme of 11 U.S.C. § 507 if the Debtor has claimed the liquidated Property as exempt based on tenants by the entirety. It is the Debtor's contention that if the Debtor has not claimed real property as exempt pursuant to tenancy by the entirety then a joint claim should not enjoy status above creditors where only the debtor spouse is liable. According to the Debtor, tenancy by the entirety must be claimed and is not automatic.

The IRS asserts that under North Carolina law, the surplus sale proceeds of tenants by the entireties property become tenants in common personal property after a voluntary sale, and the Debtor's one-half interest in the remaining proceeds should be disbursed to the IRS under the priorities of the Bankruptcy Code, which directs the proceeds be disbursed as property of the estate to the IRS. In the alternative, the IRS contends even if the proceeds were not brought into the estate as tenants in common proceeds, the IRS has the ability to collect against the Debtor's one-half interest in any tenants by entireties property absent bankruptcy.

Mr. Clifton agrees with the Trustee's proposed distribution and iterates that his one-half interest in the net sale proceeds is not property of the estate and should be distributed to him as required by the plain language of 11 U.S.C. § 363(j).

PNC objects to the Trustee's proposed disbursement and contends it should receive all of the Net Proceeds after deducting trustee compensation, the residential exemption, and the cash payout for

6

washer/dryer/refrigerator. PNC cites to two Fourth Circuit Court of Appeals decisions *Chippenham Hosp., Inc. v. Bondurant*, 716 F.2d 1057 (4th Cir. 1983) and *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985) that recognize a joint creditor holding a claim against tenants by the entirety property holds a special status and the proceeds of the sale of entireties property may be distributed to joint creditors.

The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541 (a). The estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Section 541 has been construed logically to include the debtor's interest in entireties property." *Chippenham Hosp., Inc. v. Bondurant*, 716 F.2d 1057, 1058 (4th Cir. 1983) (citation omitted). Although pursuant to §541(a) of the Bankruptcy Code entireties property becomes property of the bankruptcy estate, the "filing of a bankruptcy petition by one spouse does not sever the tenancy by the entirety or otherwise change the nature of either spouse's interest in the property." *In re Payne*, No. 04-52124C-7W, 2004 WL 2757907, at * 2 (Bankr. M.D.N.C. Nov. 15, 2004) (citing *Greenblatt v. Ford*, 638 F.2d 14, 15 (4th Cir. 1981)).

Pursuant to 11 U.S.C. § 522(b) a debtor may choose either the Federal exemptions allowed in subsection (d), or the exemptions to which she is entitled under other Federal law and the State of her domicile. 11 U.S.C. § 522(b). *House Report No.* 95-595, 95th Cong., 1st Sess. 360-1 (1977). Debtors residing in "opt out" states may claim only the state-provided exemptions, nonbankruptcy federal exemptions, and exemptions provided in section 522(b)(3)(B) and (C). North Carolina has opted out of the exemption scheme provided in the Bankruptcy Code. N.C. Gen. Stat. §1C-1601(f). "Thus, a debtor in North Carolina has the following exemptions available to him: (1) North Carolina's list of exemptions, (2) federal non-bankruptcy exemptions, *and* (3) Section 522(b)([3])(B)'s entireties and

joint tenancy exemption." *In re Payne*, 2004 WL 2757907, at *2 (emphasis in original) (citing *In re Bunker*, 312 F.3d 145, 151 (4th Cir. 2002)).

Pursuant to section 522(b)(3)(B) any interest in property in which the debtor held as a tenant by the entirety immediately before the commencement of the case is exempt to the extent that such interest as tenant by the entirety is exempt from process under *applicable non-bankruptcy law*. 11 U.S.C. § 522 (b)(3)(B)(emphasis added). "In the Fourth Circuit, a debtor's right to exempt entireties property pursuant to Section 522(b)([3])(B) is subject to the right of the bankruptcy trustee to liquidate entireties property for the benefit of joint creditors." *In re Payne*, 2004 WL 2757907 at *1 (citing *In re Mikles*, No. 03-52865, slip op. at 3 (Carruthers, J. January 13, 2004), citing *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985)). In this case, PNC is the only joint creditor. The IRS holds an individual unsecured priority claim against the Debtor.

North Carolina law on tenancies by the entirety is the "applicable non-bankruptcy law" at issue in this case. *See In re Payne*, 2004 WL 2757907 at *2 (noting that North Carolina law governs the extent of a chapter 7 debtor's exemptions). Because North Carolina law is applicable, the effect of the exemptions on the creditors' claims should mirror the treatment of tenancy by the entirety property in North Carolina courts. *See In re Ginn*, 186 B.R. 898, 901 (Bankr. D. Md.). In North Carolina, tenants by the entirety is not a listed exemption in North Carolina General Statute §1C-1601. However, the ownership attributes of tenants by the entirety property act the same as a claim of exemption from the claims of individual creditors.

North Carolina recognizes the common law doctrine known as tenants by the entirety. James A. Webster, Patrick K. Hetrick, & James B. McLaughlin, Jr., *1-7 Webster's Real Estate Law in North Carolina* § 7.04[a] (6th ed. 2012). North Carolina General Statute § 39-13.6 (b) provides for the

8

creation of a tenancy by the entirety. *Id.* at § 7.04[a].  A tenancy by the entirety is distinguished from other co-ownership interests by the five unities of time, title, interest, possession, and person.  *Davis v. Bass*, 188 N.C. 200, 203, 124 S.E. 566, 568 (1924).

A tenants by the entirety can exist only between husband and wife.  Webster, supra, § 7.04[a]. In North Carolina "when land is conveyed or devised to a husband and wife, nothing else appearing, they take by the entirety, and upon the death of either one of them the other takes the whole by right of survivorship." *Id.* at § 7.04[b].[2]  "[T]enancy by the entirety takes its origin from the common law when husband and wife were regarded as one person . . ." *Davis*, 188 N.C. at 203, 124 S.E. at 567. By virtue of the marital relationship, the husband and wife acquire the same estate and "each is deemed to be seized of the whole, and not of a moiety or any undivided portion thereof. They are seized of the whole, because at common law they were considered but one person . . ." *Id.* 188 N.C. at 203, 124 S.E. at 568.

 Neither spouse can convey his or her interest without the consent of the other. *Id.* 188 N.C. at 205, 124 S.E. at 568-569 (citation omitted). Real property held by husband and wife as tenancy by the entirety is not subject to a claim by a creditor against only one spouse without the assent of the other. *Id.* (citation omitted).

Under North Carolina law, property held as tenancy by the entireties can only by reached by joint creditors to satisfy joint debts.  *Id.*, 188 N.C. at 205, 124 S.E. at 569. Accordingly, "where joint creditors exist, a debtor's equity in entireties property above the amount of the joint obligations

---

[2]In North Carolina, the tenants by the entirety exemption also extends to mobile homes. *Id.* When a husband and wife are co-owners of a mobile home a tenancy by the entirety is presumed. *Id.*

qualifies for the Section 522(b)([3])(B) exemption." *In re McRae*, 308 B.R. 572, 575 (N.D. Fla. Aug. 25, 2003).

The Fourth Circuit has recognized that 11 U.S.C. § 363 permits the trustee to sell entireties property in order to pay joint creditors. *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985). In *Sumy v. Schlossberg*, the Fourth Circuit addressed "whether entireties property may be exempted under § 522(b)([3])(B) of the Bankruptcy Code when an individual debtor schedules debts owed jointly with his or her spouse." *Sumy v. Schlossberg*, 777 F.2d 921, 922 (4th Cir. 1985). There, the debtor and his non-filing spouse owned real property in Maryland held as tenants by the entireties. *Id.* The debtor claimed the Maryland entireties property as exempt in his bankruptcy petition. *Id.* The debtor listed indebtedness owned jointly with his non-filing spouse on his schedules. *Id.* Under the Bankruptcy Act of 1898, if only one spouse filed bankruptcy the "entireties property was treated as exempt and thus never became part of the individual bankrupt's estate." *Id.* at 925 (citations omitted). Under the 1898 Act it was necessary for a joint creditor to obtain relief from the automatic stay and withholding of the discharge in order to obtain a judgment and execution against the entireties property in state court. *Id.* The Fourth Circuit noted that this is no longer the case and now 11 U.S.C. § 541(a)(1) includes the debtor's interest in entireties property within the bankruptcy estate. *Id.* The trustee argued that the debtor's entireties property was not exemptible and that the bankruptcy court should administer the property for the benefit of joint creditors. *Id.* at 924. The Fourth Circuit noted that because §522(b)(3)(B) only excludes entireties property that is exempt from process under "applicable nonbankruptcy law," it needed to examine Maryland law to determine the extent of any available exemption. *Id.*

The Fourth Circuit reiterated that a guiding principle within all of its relevant cases is that "joint creditors are entitled, and should in some manner be allowed, to reach entireties property to satisfy their claims." *Id.* at 927. In interpreting § 522(b)(3)(B) the Court clarified "'to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law' means 'to the extent that there are only individual claims' because entireties property is not exempt from process to satisfy joint claims [under state law]."*Id.* at 928.  The Fourth Circuit held that joint property owned as tenants by the entirety, is not exempted from the individual debtor's estate and the trustee may administer the property for the sole benefit of joint creditors. *Id.* at 932. Therefore, regardless of whether the Debtor claims the tenants by the entirety exemption, joint creditors are entitled to reach entireties property to satisfy their claims. *See In re Surles, Jr.*, No. 01-13070C-7G, 2003 WL 2006846, at *1 (Bankr. M.D.N.C. May 1, 2003) (following the trustee's sale of entireties property, the resulting proceeds were only subject to the claims of joint creditors even though the debtors did not utilize the §522(b)(3)(B) exemption).

In reaching its decision in *Sumy*, the Fourth Circuit revisited one of its previous cases, *Chippenham Hosp., Inc. v. Bondurant*, 716 F.2d 1057 (4th Cir. 1983). *Bondurant* held that an "unsecured joint creditor could have the automatic stay lifted in order to reduce its claim to judgment in state court and to enforce that judgment against property owned as tenants by the entireties by the debtor and his nonfiling wife." *Sumy*, 777 F.2d at 927.  In *Bondurant*, the chapter 7 debtor's wife was a patient at a hospital prepetition. *Bondurant*, 716 F.2d  at 1057. The debtor listed the hospital as an unsecured creditor on his petition. *Id.* The debtor claimed an exemption in his undivided interest in residential real property, which he and his wife owned as tenants by the entirety. *Id.* The hospital filed a motion for relief from stay and a stay of the discharge to allow it to seek a state court judgment

11

against both the debtor and his wife. *Id.* The bankruptcy court granted the hospital's request and the district court affirmed the bankruptcy court's order. *Id.* The debtor appealed and the Fourth Circuit affirmed the district court's judgment. *Id.* The Fourth Circuit reaffirmed that joint creditors are entitled to reach entireties property to satisfy their claims. *Id.* at 1058 (reiterating that "[t]he purpose of the bankruptcy act was to equitably distribute the assets of distressed debtors among their creditors and to discharge them from further liability after this had been done. It was never contemplated that it should be used to perpetrate fraud or to shield assets from creditors . . . . [t]here is ample authority for the proposition that where the property is not reachable through bankruptcy, but can be reached by a creditor under state laws, the court of bankruptcy should delay granting a discharge to the bankrupt to enable the creditor to proceed thereunder in the state courts.") (citations omitted). Together, *Sumy* and *Bondurant* recognize that joint creditors are entitled to reach entireties property to satisfy their claims just as they are entitled to do so under non-bankruptcy law.

The Eastern District of North Carolina addressed facts similar to the case at hand in *In re Hardin Crouch*, 33 B.R. 271 (1983). In that case, the chapter 7 debtor listed real property in his schedules owned by the debtor and his estranged wife, Mrs. Crouch, as tenants by the entirety. *Id.* at 272. The debtor did not claim any exemption for the real property. *Id.* The debtor was previously ordered in state court divorce proceedings to pay alimony to Mrs. Crouch, but failed to make any of the alimony payments. *Id.* The debtor listed a joint debt in the amount of $370,853.91, owed to the Farmers Home Administration, secured by land valued at $247,000 and a joint judgment to FCX, Inc. in the amount of $17,958.00. *Id.* at 273. The debtor also listed a priority debt to the IRS in the amount of $50,000.00. *Id.* Mrs. Crouch moved to amend the debtor's exemptions by claiming the real property as exempt pursuant to 11 U.S.C. § 522(b)(3)(B) and the common law of North Carolina. *Id.* The trustee

12

and the debtor objected to the exemptions claimed by Mrs. Crouch.  *Id.*  The court allowed Mrs. Crouch to amend the exemptions. *Id.* at 274 (noting it is the debtor's right to choose the exemptions, but if they are not claimed in good faith and for the purpose of circumventing the debtor's obligations to support his spouse, the spouse should be permitted to claim additional exemptions so long as they do not unduly prejudice the debtor).  The bankruptcy court noted that property held as tenants by the entirety in North Carolina is subject to the claims of creditors having a joint judgment against both the husband and wife. *Id.* (citations omitted).

The bankruptcy court in *In re Oberlies*, 94 B.R. 916 (Bankr. E.D. Mich. 1988) noted that the rights of creditors are established at the time the petition is filed. *Id.* at 919. "If the priority creditor has no claim against the non-debtor spouse under applicable non-bankruptcy law, it could not collect its claims from the joint property." *Id.* at 920. (noting that the IRS has limited rights to realize on tenancy by the entirety property). "[S]tate law, which gives joint creditors, but only joint creditors, rights in entireties property" prevails. *Id.* at 920.  The bankruptcy court held that the chapter 7 trustee could administer tenants by the entirety property held by the debtor and the non-filing spouse only for the benefit of joint creditors. *Id.* at 923. Bankruptcy administration should not affect any change in substantive property rights. *Id.* "[T]he proceeds of the sale of the entireties property must be distributed to joint creditors; if there are joint priority creditors, then § 726(a) mandates payment to them before paying joint non-priority creditors. If there are non-joint priority creditors, then they must be paid, if at all, out of the general estate funds." *Id.*

PNC contends it is entitled to receive all Net Proceeds held by the Trustee after deducting trustee compensation and reimbursement based on the Fourth Circuit's *Sumy* and *Bondurant* cases.[3]

The Debtor contends that because she did not claim the tenancy by the entirety exemption in her schedules, the Property loses its tenancy by the entirety status and as a result the Property converts to tenants in common, whereby the IRS as an individual creditor of the Debtor would be entitled to satisfy its claim ahead of PNC, the joint unsecured creditor. The Debtor asserts that the tenancy by the entirety exemption can be used as a "shield" to protect the estate from individual claimants if the Debtor so chooses to raise it and that the Debtor can also choose to lower the shield and subject the Property to individual claims ahead of joint claims without the assent of her non-filing spouse. The Debtor bases this argument on the fact that 11 U.S.C. § 522(b) uses the word "may," and therefore, the Debtor can in effect waive the tenancy by the entirety exemption by choosing to not claim the exemption in her schedules.[4]

_____

[3]As a threshold matter, it must be noted that PNC, the only joint creditor, need not hold an actual judgment as a prerequisite for the trustee to administer the entireties property. *In re Monzon*, 214 B.R. 38, 42 (Bankr. S.D. Fla. 1997) The Fourth Circuit in *Sumy v. Schlossberg*, 777 F.2d 921, 928 n. 14 (4th Cir. 1985) articulated:

> [T]he absence of a judgment or lien has no bearing on the hypothetical issue of whether the debtor's interest would be exempt from process under state law, so the [entireties] property cannot be exempted and remains part of the estate to the extent of joint claims regardless of the joint creditors' actual possession of a judgment or lien under state law.

*Id.*

[4]While the Court finds that North Carolina real property retains its tenancy by the entirety status in bankruptcy regardless of whether the Debtor chooses to claim it as exempt, it is worth noting that as a matter of statutory construction §522(b)(1) reads: "an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection." 11 U.S.C. § 522(b)(1). The word "may" as used in this section appears to give the debtor the option of choosing either the exemptions listed in paragraph (2) or the exemptions listed in paragraph (3). It does not appear from the face of the

Because North Carolina law is the "applicable non-bankruptcy law" at issue, the treatment of the claims should mirror the treatment of such claims against property held as tenants by the entireties under North Carolina law. *See In re Ginn*, 186 B.R. 898 (Bankr. D. Md.).[5] Under North Carolina law, individual creditors cannot reach property held as tenants by the entirety. *Davis v. Bass*, 188 N.C. 188 N.C. 200, 205, 124 S.E. 566, 568-69 (1924). Real property held as tenants by the entirety in North Carolina is not subject to claims of individual creditors without the assent of the other. *Id.* Applying the above precedents, the Court finds that filing a bankruptcy petition does not change this result.[6] Property held as tenants by the entirety is exempt from the claims of all individual creditors regardless of whether one of the spouses files a bankruptcy petition. "If a creditor has no rights against a debtor under applicable nonbankruptcy law, then State law should prevail unless there is an overriding Federal policy which ought to take precedence." *In re Cerreta*, 116 B.R. 402, 406 (Bankr. D.Vt. 1990). Individual creditors should not receive a windfall as a result of the filing of a bankruptcy petition. *Raynard v. Rogers*, 354 B.R. 834, 839 (Bankr. W.D. Mich. 2006). "Whether outside of a bankruptcy

---

statute, that once the debtor chooses either paragraph (2) or (3) that the debtor *may* further choose whether to exempt the tenancy by the entirety property.

[5]A bankruptcy case should follow the property rights under state law. *See In re Ginn*, 186 B.R. 898, 901 (Bankr. D. Md.). The United States Supreme Court stated in *Butner v. United States*:

> [p]roperty interest are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

*Id.* (quoting 440 U.S. 48, 55 (1979)).

[6]Further, on January 30, 2012, this Court entered the order sustaining PNC's objection to the debtor's exemption holding that the Debtor may not exempt the Property from the PNC joint claim or any other joint claims. The Order stated "the debtor's tenancy by the entireties exemption shall be valid only with respect to claims held against the debtor, but not joint claims against debtor and her non-filing spouse." The Order was not appealed.

estate or inside it, a debtor's interest in property held as a tenant by the entireties is exempt from the claims of his or her individual creditors . . . ." *Id.* (noting that the Michigan Court of Appeals was clear on this point when it stated that ordinary creditors could not reach interests in entireties property, and if there are no joint creditors the entire interest is exempt).

The Fourth Circuit has reiterated that "joint creditors are entitled, and should in some manner be allowed, to reach entireties property to satisfy their claims." *Sumy v. Schlossberg*, 777 F.2d 921, 927 (4th Cir. 1985). If one spouse files for bankruptcy, a trustee may sell the property held as tenants by the entirety only if there are joint creditors in the case. *Id.* The proper interpretation of § 522(b)(3)(B) is "[t]o the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law" means "to the extent that there are only individual claims." *Id.* at 928. Accordingly, this Court finds that PNC is entitled to receive all Net Proceeds held by the Trustee after deducting trustee compensation and reimbursement based on the Fourth Circuit's *Sumy* and *Bondurant* cases.

The IRS asserts that once tenants by the entireties property is sold, the surplus sale proceeds become tenants in common personal property after a voluntary sale. The IRS contends that once the Property is sold it destroys the tenancy by the entirety and the proceeds become tenants in common between the spouses. The proceeds could then be used to satisfy individual creditor's claims. Accordingly, the IRS contends that the Debtor's one-half interest in the remaining proceeds should be disbursed to the IRS under the priorities of the Bankruptcy Code. In the alternative, the IRS contends even if the proceeds are not considered tenants in common personal property, the IRS has the ability to collect against the Debtor's one-half interest, absent bankruptcy.

The Fourth Circuit in *Sumy* was not asked to address the issue of what happens to the proceeds of tenants by the entireties property once it is sold by a trustee pursuant to 11 U.S.C. § 363. *See In re Ginn*, 186 B.R. 898, 902 (Bankr. D. Md.). In North Carolina, the proceeds from a voluntary sale or conveyance of tenancy by the entirety real property become tenants in common property. *In re Surles*, No. 01-13070C-7G, 2003 WL 2006846, at *2 (Bankr. M.D.N.C. 2003). However, an involuntary transfer of real property does not terminate the tenancy by the entirety. *Id.* North Carolina has ruled that condemnation or the taking by eminent domain are not considered voluntary conversions and the resulting proceeds hold their tenants by the entirety status. *Id.* (citing *Highway Commission v. Myers*, 270 N.C. 258, 262, 154 S.E.2d 87, 90 (1967). Further, North Carolina considers proceeds generated by foreclosure and sale of real property pursuant to a power of sale contained in a deed of trust to be held as tenants in common. *See In re Foreclosure of Deed of Trust Recorded in Book 911 at Page 512, Catawba County Registry*, 303 N.C. 514, 517-519, 279 S.E.2d 566, 567-569 (1981). The Bankruptcy Court for the Middle District of North Carolina commented on the difficulty of applying such nonbankruptcy law in the context of a bankruptcy case and ultimately decided that a trustee's sale of real property is more in the nature of an involuntary transfer from the perspective of the Debtors. Therefore the resulting proceeds retained the characteristics of a tenancy by the entirety. *In re Surles*, 2003 WL 2006846 at *2 (noting that case law is divided on the issue of whether the bankruptcy trustee's sale of entireties property destroys the tenancy by the entirety). In North Carolina, the proceeds of an involuntary transfer are subject to the claims of joint creditors but are not subject to the claims of individual creditors outside of bankruptcy. *Id.* The bankruptcy court reiterated the guiding principle that "[t]he filing of a bankruptcy case does not increase the substantive rights of a creditor." *Id.* (citing *In re Ginn*, 186 B.R. 898, 901 (Bankr. D.Md. 1995)).

17

In addition, the argument that a trustee's sale of entireties property destroys the tenancy by the entirety and creates a tenancy in common "is flawed, however, because it catapults a procedural vehicle in 11 U.S.C. § 363(h) that is designed to allow a trustee to realize upon the value of a joint property interest, into a substantive right that would give creditors of only one spouse a right against entireties property that did not exist outside bankruptcy." *In re Ginn*, 186 B.R. at 902. Pursuant to *Sumy,* the Trustee has the right to sell the tenancy by the entirety property for the benefit of joint creditors. *Id.* at 903. If the sale proceeds of a §363(h) sale become tenants in common then the result reached by the Fourth Circuit in *Sumy* would be senseless. If the property is to be administered for the benefit of joint creditors, it follows that the proceeds should be disbursed for the benefit of the joint creditor. If the tenancy by the entirety is automatically terminated, then the joint creditor is not protected. *Sumy* and *Bondurant* state the property is to be administered for the benefit of joint creditors.  Further, pursuant to 11 U.S.C. § 522(b)(3)(B), the exemption issue should be analyzed based on the property interests as they existed "immediately before the commencement of the case" not based on the property interests as they existed subsequent to the trustee's sale.  *See In re Monzon*, 214 B.R. 38, 45, n. 7 (Bankr. S.D. Fla. 1997).

In the alternative, if the Court decides the proceeds are not considered tenants in common property, the IRS argues it has authority to collect from tenants by entireties property under non-bankruptcy law and cites to *United States v. Craft*, 535 U.S. 274 (2002) and *United States v. Rodgers*, 461 U.S. 677 (1983). In *United States v. Craft*, 535 U.S. 274, 276-77 (2002), the Supreme Court held the IRS may attach to tenants by the entirety property to collect a tax debt under 26 U.S.C. § 6321 when federal taxes are owed by one spouse.  The facts of *Craft* are distinguishable from the facts of the present case. In the present case, the Property was sold pursuant to a sale under § 363(h). The

Fourth Circuit in *Sumy* has held that in the situation of a trustee's sale under § 363(h), to the extent the debtor and nonfiling spouse are indebted jointly, property owned as tenants by the entireties may not be exempted and the property is to be administered for the benefit of joint creditors. *Sumy v. Schlossberg*, 777 F.2d at 932. In *Craft* there was never a trustee's sale under § 363(h), as *Craft* did not involve a bankruptcy filing. Further, in *Craft*, the facts of the decision do not indicate there were any joint creditors involved. Because the present case involves joint creditors, "[t]he proceeds of the sale of the entireties property must be distributed to joint creditors; if there are joint priority creditors, then § 726(a) mandates payment to them before paying joint non-priority creditors. If there are non-joint priority creditors, then they must be paid, if at all, out of the general estate funds." *In re Oberlies*, 94 B.R. at 920. In *United States v. Rodgers*, the IRS filed suit under 26 U.S.C. §§ 7402 and 7403 to reduce to judgment the tax assessments. 461 U.S. 677, 687 (1983) (noting that the IRS may also use administrative levy under 26 U.S.C. §6331 to enforce its claim). The Supreme Court held that 26 U.S.C. § 7403 allows the sale of a family house to satisfy the delinquent taxpayer's debt even though a nondelinquent taxpayer also has an interest in the house. *Id.* at 703-04. Both of the cases cited to by the IRS do not involve bankruptcies nor the rights of a trustee in bankruptcy.

Here, the IRS has not filed a Notice of Federal Tax Lien and is attempting to take proceeds ahead of PNC, a joint creditor. The IRS claims it has a lien pursuant to 26 U.S.C. § 6321 which states: "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. 26 U.S.C. § 6323 provides that the "lien imposed by section 6321 shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof . . . has been filed by the Secretary."

Accordingly, the IRS is not required to file a Notice of Federal Tax Lien in order for the tax lien to attach. IRS Manual, Part 5, Chapter 17, Sec. 2. Federal Tax Liens 5.17.2.2.1 (03-27-2012).[7]

However, the IRS may file a Notice of Federal Tax Lien in order to have priority over other creditors.  A trustee in a bankruptcy proceeding has the rights and powers of a hypothetical judicial lien creditor or a hypothetical bona fide purchaser of real property. 11 U.S.C. § 544(a).  Under Section 544(a)(1) the trustee is in the position of the debtor's joint creditor and has the authority to administer and sell the entireties real estate and distribute the proceeds. *Sumy v. Schlossberg*, 777 F.2d 921, 931, n. 25 (4th Cir. 1985). Accordingly, the trustee is entitled to prevail over unrecorded tax liens. *United States v. Speers*, 382 U.S. 266, 275-76 (1965) (holding that § 6323 and § 70c entitle the trustee to prevail over unrecorded federal tax liens).  Based on the solid Fourth Circuit precedents of *Sumy* and *Bondurant*, the Net Proceeds shall go to the sole joint creditor, PNC, less expenses of sale.

Mr. Clifton contends that one-half of the Net Proceeds should be distributed to him. The Court disagrees.  As the Fourth Circuit iterated in *Sumy* and *Bondurant*, the Net Proceeds are to be administered for the benefit of joint creditors. This special status afforded to joint creditors arises from the rights of creditors under North Carolina law. In North Carolina only creditors with joint claims can obtain a lien against entireties property and cause the entireties property to be sold on execution or require that its lien be paid upon the sale of the property.  *See In re Woolard,* (*Southern Nat'l. Bank of N.C. v. Woolard*), Ap. No. 80-0462-AP13 B.R. 105 (Bankr. E.D.N.C. 1981).  All joint creditors are to be paid in full first. If there are monies left over, then one-half of the remaining funds would go to the bankrupt debtor's estate, and one-half to the non-filing spouse. Here, there are no surplus funds

---

[7]It is this Court's opinion that even if the IRS has a perfected lien, its lien would only attach upon the Debtor's right of survivorship.  The IRS would then only be entitled to the whole of Debtor's interest, should the non-filing spouse pre-decease the Debtor.

available after payment to PNC. Mr. Clifton is not entitled to a distribution as no funds remain above and beyond payment of the joint claim of PNC.

Mr. Clifton bases his argument on Section 363(j) which provides for the distribution of the sale proceeds. 11 U.S.C. § 363(j) provides:

> [a]fter a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

11 U.S.C. § 363(j). This Bankruptcy Code section was in effect at the time both *Sumy* and *Bondurant* were decided. Nevertheless, the Fourth Circuit held the trustee was to administer tenants by the entirety property for the benefit of joint creditors. Further, § 363(j) does not address the issue of the sale being conducted for the benefit of a joint creditor.

## **CONCLUSION**

Therefore, the Court holds that the Trustee is **ORDERED** to disburse $149,266.03 to PNC. This amount represents the Net Proceeds of $191,016.03 less: (1) the residential exemption claimed by the Debtor in the amount of $13,500.00; (2) the cash payout for washer/dryer/refrigerator in the amount of $1,000.00; and (3) the Trustee's legal fees in the amount of $27,250.00.

**SO ORDERED.**

**END OF DOCUMENT**